IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| **Kevin R. Rone,** ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | **1:08cv399 (CMH/JFA)** |
| ) | |
| **Gene Johnson,** ) | |
| **Respondent.** ) | |

<u>MEMORANDUM OPINION</u>

Kevin R. Rone, a Virginia inmate proceeding <u>pro se</u>, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the sentence he is serving as the result of the revocation of his parole. By Order dated July 31, 2008, respondent was directed to show cause within sixty days why the writ should not be granted. On September 29, 2008, respondent filed a Rule 5 Answer, a Motion to Dismiss the petition, a brief in support that Motion, and the notice required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K). Petitioner was given the opportunity to file responsive materials, and he has filed a reply. For the reasons that follow, the petition must be dismissed.

**I. Background**

Exhibits supplied by the respondent reveal the following salient facts, which petitioner does not dispute. On July 26, 1993, the Fairfax County General District Court sentenced Rone to serve six (6) months for petty larceny in case number F93-9378. Fahey Aff. ¶ 6. On August 27, 1993, the Fairfax County Circuit Court imposed on Rone a sentence of six years each in three prosecutions for robbery, case numbers 80672-1, 80673-1, and 80673-2, for a total sentence of eighteen (18) years.

Fahey Aff. ¶ 7. On December 9, 1993, Rone received a sentence of twenty (20) years in prison for larceny from a person, with fifteen (15) years suspended, for a net sentence of five (5) years in Prince William County Circuit Court case number 33733. Fahey Aff. ¶ 8. Rone's total combined sentence, which is used by the Virginia Department of Corrections (VDOC) as the basis for calculating an inmate's discretionary and mandatory parole and good time release dates, was twenty-five (25) years and six (6) months. Fahey Aff. ¶¶ 4-5.

Rone was received into the VDOC on February 18, 1994. Fahey Aff. ¶ 10. As an inmate whose offenses were committed before January 1, 1995, Rone's sentence was governed by the Good Conduct Allowance (GCA) system pursuant to Va. Code §§53.1-198 through 53.1-202. Fahey Aff. ¶ 9. Rone was released on mandatory parole on January 24, 2005. Fahey Aff. ¶ 10.

On September 16, 2006, Rone was arrested on new charges. He was returned to VDOC custody on February 22, 2007, and his parole was revoked on March 28, 2007. Fahey Aff. ¶¶ 11-12. Pursuant to Va. Code §§53.1-159 and 53.1-165 as well as Virginia Parole Board ("VPB") policy, upon the revocation of an inmate's mandatory parole, all time not physically served on applicable sentences must be served. In Rone's case, a total of eleven (11) years, eight (8) months, and fifty-three (53) days of his sentence remained unserved when he was released on mandatory parole. Fahey Aff. ¶ 12. At present, Rone has a projected mandatory release date of July 25, 2013. Fahey Aff. ¶ 14.

In October, 2007, Rone submitted an application for a writ of habeas corpus to the Virginia Supreme Court, raising the same claims he makes in this federal petition. Resp. Ex.I. On January 9, 2008, that Court dismissed Rone's petition as frivolous. Rone v. Director, VDOC, R. No. 072117, slip op. (Va. Jan. 9, 2008); Resp. Ex. I.

This federal proceeding for a writ of habeas corpus pursuant to § 2254 ensued on April 14, 2008,[1] with Rone making the following claims:

1. Application of Va. Code § 53.1-159 increases the punishment of parolees sentenced prior to January 1, 1995, so his incarceration to serve earned good time credits pursuant to that provision and violates the ex post facto prohibition.

2. The re-issuing of his earned good time credits as a sentence to be physically served violates his liberty interests created by the Virginia Code and his federal right to due process.

3. His incarceration to serve earned good time credits as a mandatory parole violator impinged upon his right to equal protection, because a discretionary parole violator upon revocation is only required to serve his 'time left to serve.'

## II. Exhaustion

The respondent rightfully does not challenge any of petitioner's claims as unexhausted. Before bringing a federal habeas petition, state prisoners must first exhaust their claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v. Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner must present the

---

[1] A pleading submitted by a pro se prisoner is deemed filed when it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988); Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991).

3

same factual and legal claims raised in the instant case to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition. Duncan v. Henry, 513 U.S. 364 (1995). Rone has fulfilled this requirement as to each of his present claims.

### III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

In this case, the Virginia Supreme Court's rejection of Rone's claim was an adjudication on the merits, as neither a explanatory decision or a detailed order is required under § 2254(d). See Parker v. Angelone, 959 F.Supp. 319, 322 ( E. D. Va. 1997) (Virginia Supreme Court's dismissal of case as frivolous constituted an adjudication on the merits).

## IV. Analysis

### A. Ex Post Facto Challenge

In his first claim, Rone argues that his loss of good time credits upon the revocation of his mandatory parole violated the ex post facto prohibition of the United States Constitution. Specifically, he contends that the VPB's application of Va. Code § 53.1-159 violates the Ex Post Facto Clause because it has increased the punishment of parolees sentenced prior to January 1, 1995. However, Rone's position is without merit.

The Ex Post Facto Clause prohibits laws that retroactively increase the punishment for a crime that has already been committed. U.S. Const., art. I, § 10, cl. 1; Warren v. Baskerville, 233 F.3d 204, 206 (4th Cir. 2000). A law runs afoul of the ex post facto prohibition if it disadvantages the offender and applies to events occurring before its enactment, thereby altering the legal consequences of a crime after it was committed. Woodley v. Dep't of Corr., 74 F. Supp. 2d 623, 631 (E.D. Va. 1999) (citing Weaver v. Graham, 450 U.S. 24, 30 (1981)). However, a policy change to exercise pre-existing statutory powers, without a change in the statutory law itself, does not amount to an ex post facto violation. United States v. Ellen, 961 F.2d 462 (4th Cir. 1992) (change in administrative policy or interpretation of a statute in effect at the time criminal conduct occurs does not violate the Ex Post Facto Clause); Brown-El v. Va. Parole Bd., 948 F.Supp. 558, 561 (E. D. Va. 1996) (VPB's May 11, 1995 decision to exercise its discretionary authority pursuant to Va. Code §§

53.1-159 - 165 to require parole violator to serve entire unserved portion of sentence did not violate ex post facto prohibition).

In this case, Rone's punishment has not been increased, since the VPB has not incarcerated him for longer than the full term of his original sentences; instead, the VPB has simply declined to apply good time credit earned before his release on parole against his sentence. The Fourth Circuit has explicitly rejected the ex post facto challenge Rone presents, holding that the VPB possessed the authority to revoke good-time credits under Va. Code § 53.1-165 before the 1994 amendments to § 53.1-159. Warren, 233 F.3d at 207. Additionally, the Fourth Circuit held that the 1995 policy change did not violate the Ex Post Facto Clause because it was merely a change in a longstanding administrative policy. Id. The fact that the VPB "may have relied on § 53.1-159, instead of § 53.1-165 in revoking [Rone's] good-time credits is of little weight." Id. Therefore, the Supreme Court of Virginia's rejection of Rone's first claim was neither contrary to, nor an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts, so the same result must pertain here.

B. Due Process Claim

In his second claim, Rone contends that re-issuing of his earned good time credits as a sentence to be physically served violates his liberty interests created by the Virginia Code and his federal right to due process. Again, however, his argument is misplaced.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To succeed on a due process claim, Rone must demonstrate (1) that he has a protected liberty interest within the meaning of the Fourteenth Amendment and (2) the VPB denied him the procedural

process he was due. See Brown-El, 948 F. Supp. at 560. It is well settled that a Virginia inmate has a liberty interest in the opportunity to earn good-time credits while incarcerated. Id. at 560-61. However, Rone was not denied that interest, since he received the full benefit of his earned good-time credits through his early release. Rone effectively "used up" his good-time credits to obtain his early release, and he was not entitled to the return of these credits upon his reincarceration for violating conditions of his parole. Id. at 561. Thus, Rone fails to show that the Supreme Court of Virginia's dismissal of this claim was either contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts, and federal relief likewise must be denied. Williams, 529 U.S. at 412-13.

### C. Equal Protection Claim

Similarly, Rone's equal protection claim fails because he has not demonstrated that he was treated differently from similarly-situated parolees or that the VPB intentionally discriminated against him in revoking his parole. The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors, ensuring that all people similarly situated will be treated the same. U.S. Const. amend. XIV. To succeed on an equal protection claim, Rone must show that (1) he was treated differently from others (2) who were similarly situated and (3) this unequal treatment was the result of intentional or purposeful discrimination. Plyer v. Doe, 457 U.S. 202 (1982); Washington v. Davis, 426 U.S. 229, 229 (1976); Morrison v. Garraghty, 239 F.3d 648 239 F.3d 648, 654 (4th Cir. 2001); Blagman v. White, 112 F. Supp. 2d 534, 538 (E.D. Va. 2000).

While inmates are entitled to equal protection under the law, they do not constitute a suspect class, and so are not entitled to strict scrutiny. Roller v. Gunn, 107 F.3d 227 (4th Cir. 1997). Instead, the proper inquiry is whether the challenged action served a legitimate state interest to which it was

rationally related. Moss v. Clark, 886 F.2d 686 (4th Cir. 1989). It has been noted that, "[g]iven the[] different conditions and the myriad of factors involved in deciding parole revocation, 'it is difficult to believe that any two prisoners could ever be considered "similarly situated" for the purpose of judicial review of an equal protection claim.'" Brown-El v. Va. Parole Bd., 948 F. Supp. 558, 561 (E.D. Va. 1996) (citations omitted).

Here, Rone's assertion that he is similarly situated to discretionary parole violators is misplaced. Virginia inmates are released on discretionary parole only if and when they are deemed suitable for release, and under Virginia law the VPB has absolute discretion in such decisions. Garrett v. Commonwealth, 14 Va. App. 154 (1992). The decision to grant discretionary parole is dependent upon "subjective evaluations and predictions of future behavior," Gaston v. Taylor, 946 F.2d 340 (4th Cir. 1991) (en banc), and it is well established that an inmate has no constitutional right to be paroled prior to the expiration of a valid sentence. See Greenholtz v. Inmate of Nb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). In contrast, the release of a prisoner like Rone on mandatory parole is based solely on time calculation, since pursuant to Va. Code § 53.1-159, all prisoners are to be released six (6) months prior to their final release date; the suitability of the prisoner for such release plays no part in such a determination. Therefore, Rone's contention that as a mandatory parole violator he is similarly situated to discretionary parole violators is incorrect. Moreover, Rone alleges no facts suggesting that the VPB was motivated by a discriminatory purpose in promulgating the 1995 policy and applying it to him. Thus, the Supreme Court of Virginia's rejection of Rone's argument was neither contrary to, nor an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts, and Rone's assertion of an equal protection violation accordingly must fail.

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss the instant petition for a writ of habeas corpus must be granted, and the instant petition will be dismissed with prejudice. An appropriate Order shall issue.

Entered this 21st day of April 2009.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia